**FILED**

**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

2008 May 20 PM 04:11

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-32940 |
| | ) | |
| Gregory Ottice Tucker, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION AND ORDER
REGARDING MOTION TO DISMISS**

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 25] and Debtor's response [Doc. # 28]. The court held a hearing on the motion that Debtor's counsel and counsel for the UST attended in person and at which the parties had the opportunity to present testimony and other evidence in support of their respective positions. However, Debtor did not attend the hearing; rather, he relies upon the facts presented on the record before the court, which the UST does not dispute.[1] The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will deny the UST's motion

---

[1] As requested by the UST, the court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990).

to dismiss.

## BACKGROUND

Debtor Gregory Tucker is single with no dependents. He is employed as a shift supervisor at Republic Engineered Products where he has worked for 34 years. Based on his years of employment there, Debtor's counsel represented, and the UST does not dispute, that Debtor's age is at least early to mid-fifties. On July 10, 2007, he filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that his debts are primarily consumer debts.

Debtor's bankruptcy schedules show that he owns assets in the total amount of $32,395. He owns no real estate. His assets consist entirely of personal property, consisting primarily of a 401(k) plan in the amount of $24,200. Debtor's schedules also show an unsecured priority debt owed to the Internal Revenue Service in the amount of $3,268 and unsecured nonpriority debt in the stated amount of $47,010. The unsecured nonpriority debt consists primarily of a deficiency judgment on foreclosed real estate in the amount of $33,000. In addition, Schedule F shows a number of debts on which the amounts owed are stated as "unknown," including a deficiency balance on foreclosed real estate owed to another creditor.

Debtor's Schedule I shows gross monthly income of approximately $5,496, or $65,950 per year, and monthly income after payroll deductions in the amount of $3,316, which amount includes deductions of approximately $135 for contributions to Debtor's 401(k) plan and $234 in payment of a 401(k) plan loan. Debtor's Schedule J shows total monthly expenses in the amount of $3,307, including, among other things, a housing rental expense of $500, expenses of $300 for food and $312 for transportation, a car payment of $197, and alimony, maintenance and support paid to others in the amount of $1,428.

Debtor's Form B22A calculating the means test shows that his annualized current monthly income at the time of filing his case was above the median income for a household of one person in Ohio. No presumption of abuse arose under § 707(b)(2) after calculation of allowed deductions, primarily due to Debtor's large court ordered support payments. *See* 11 U.S.C. § 707(b)(2)(A). Rather, the UST filed a timely motion to dismiss for abuse under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") because it was filed on April 3, 2007, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss

2

a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances and that this analysis permits the court to "deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors." *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).[2]

The UST contends that the totality of the circumstances in this case show that Debtor is not needy and has the ability to repay a meaningful portion of his unsecured debt. A debtor is "needy" when "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to this determination include the ability to repay debts out of future earnings, which alone may be sufficient under some circumstances to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors relevant to need include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. As the movant, the UST carries the overall burden of demonstrating, by at least a preponderance of the evidence, that the Debtor's case should be dismissed. *In re Gonzalez*, 378 B.R. 168, 172 (Bankr. N.D. Ohio 2007).

**A. Ability to Pay**

---

[2] As this court noted in an earlier opinion:
While Congress has clearly lowered the dismissal standard, articulation of what that change really means in decision-making in a particular case is a slippery enterprise at best. A totality of circumstances amounting to substantial abuse would obviously also amount to abuse. The converse is not necessarily true. Perhaps more telling legislative evidence of a Congressional intent that bankruptcy courts should now afford less deference to a debtor's choice of Chapter 7 relief is the elimination from amended § 707(b) of the language in former § 707(b) stating that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."
*In re Carney*, No. 07-31690, 2007 WL 4287855, *2, 2007 Bankr. LEXIS 4100, *7 (Bankr. N.D. Ohio December 5, 2007).

3

As a component of a debtor's ability to pay, courts generally consider whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *Behlke*, 358 F.3d at 435). Citing *Behlke*, the UST argues that Debtor's voluntary monthly 401(k) plan contribution and 401(k) loan repayment of $135 and $234, respectively, should be considered income available to fund a Chapter 13 plan for purposes of determining whether dismissal under § 707(b)(3) is warranted in this case.

In *Behlke,* the court affirmed the bankruptcy court's decision dismissing a Chapter 7 case as substantial abuse of the provisions of that chapter, finding that the debtors' voluntary 401(k) contributions in the amount of $460 per month were not necessary for the maintenance and support of the debtors or their dependents and, therefore, should be included as disposable income for purposes of determining their ability to pay their creditors out of future earnings. *Behlke*, 358 F.3d at 435-36. In so finding, the court's "starting point" in its analysis was its earlier holding in *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777-78 (6th Cir. 1995), that a Chapter 13 debtor's voluntary repayment of loans to her retirement account was not necessary for the debtors' maintenance and support and must be included in the Chapter 13 plan as disposable income. *Behlke*, 358 F.3d at 435. The court found no reason to distinguish between the voluntary repayment of a loan from a retirement account and voluntary contributions to a 401(k) or other retirement plan. *Id.* The court then considered the bankruptcy court's findings that the debtors had accumulated $48,200 in retirement savings, stock options of unknown value, and residential real property with significant equity and that there was no indication that the value of the property would not appreciate. The court stated that "applying *Harshbarger* and finding that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value, the bankruptcy court found that the monthly 401K contribution, which is equal to 6% of Mr. Behlke's gross income, should be included as disposable income for purposes of determining the debtors' ability to pay their creditors" and that it "agree[d] completely" with the bankruptcy court's conclusion. *Id.* at 436 (emphasis added).

Courts have broadly interpreted *Behlke* and *Harshbarger* as setting forth a per se rule that voluntary contributions to retirement plans and repayment of loans to retirement plans are never a reasonably necessary expense, *see Hebbring v. U.S. Trustee*, 463 F.3d 902, 906 (9th Cir. 2006); *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D. Ohio 2006). However, in determining the reasonable necessity of such expenses, a growing number of courts, including bankruptcy courts in the Sixth Circuit, employ a case-by-case approach, considering the totality of the debtor's circumstances. *See In re Beckerman,* 381 B.R. 841, 846, 848 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D. Ohio 2007); *N.Y. City*

4

*Employee Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 129 (2d Cir. 2001); *Hebbring*, 463 F.3d at 904; *In re Hill*, 328 B.R. 490, 495 (Bankr. S.D. Tex. 2005); *In re King*, 308 B.R. 522, 532 (Bankr. D. Kan. 2004); *In re Vansickel*, 309 B.R. 189, 208-09 ((Bankr. E.D. Va. 2004).

Initially, the court notes that both *Behlke* and *Harshbarger* are pre-BAPCPA cases. To the extent *Behlke* relied on *Harshbarger*'s interpretation of "disposable income" in a Chapter 13 case, it now rests upon less sound footing. Under BAPCPA, Congress statutorily overruled *Harshbarger* in that loan repayments to certain retirement plans cannot now be considered as disposable income in a Chapter 13 case. 11 U.S.C. § 1322(f); *Eisen v. Thompson*, 370 B.R. 762, 771, n. 14 (N.D. Ohio 2007); see 11 U.S.C. § 541(b)(7)(certain plan contributions also excluded as disposable income under § 1325(b)); *In re Zaporski*, 366 B.R. 758, 773, n. 2 (Bankr. E.D. Mich. 2007). Notwithstanding these legislative changes to treatment of certain retirement contributions and loan repayments as disposable income in Chapter 13 plans, courts have continued, quite appropriately, evaluating them as part of the totality of the circumstances under § 707(b)(3)(B). *See, e.g., Zaporski*, 366 B.R. at 773; *Beckerman*, 381 B.R. 848-49.

In *Beckerman*, the court found that voluntary monthly contributions of $469 to a 401(k) plan made by fifty-five-year-old debtors with accumulated retirement savings of $7,036 and no personal or real property of any significant value were reasonably necessary for the maintenance and support of the debtors in retirement. *Beckerman*, 381 B.R. at 849. Addressing the precedent established by *Behlke*, the court first explained that "[w]hat is evident from *Behlke* is that the amount of the Debtors' existing retirement savings is relevant to the determination of whether voluntary retirement contributions are necessary for the maintenance or support of the Debtor or a dependent." *Beckerman*, 381 B.R. at 848. The court concluded that both the plain language of § 707(b)(3) and Sixth Circuit precedent require consideration of the totality of the debtor's individual circumstances in determining whether a debtors' 401(k) contributions are reasonably necessary. *Id.*; *see In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007) (stating that §707(b)(3)(B) is a "totality of the circumstances" test, leaving open the possibility that there are situations where a debtor is permitted to expense against income contributions and/or loan repayments made to a retirement account). Other factors the court found to be relevant to this inquiry include: (1) the debtor's age and time left until retirement; (2) level of yearly income; (3) overall budget; (4) amount of monthly contributions; (5) needs of any dependents; and (6) other constraints which make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *Beckerman*, 381 B.R. at 848 (citing *Hebbring,* 463 F.3d at 907; *Taylor,* 243 F.3d at 129-30).

Noting that retirement, although of increasing concern, was not imminent and that the debtors could

5

have upwards of ten or more years of productive work lives ahead of them, the court nevertheless concluded that, on balance, the inadequacy of their retirement savings coupled with their age, made their monthly 401(k) contributions reasonable and necessary. *Id.* at 848-49. The court stated that "[t]o deny the ability to contribute reasonable funds to a plan for retirement in this day and age when the Debtor is near retirement age and has no savings with which to support himself penalizes debtors 'who must either self-fund their own retirement or place their future in the hands of the social welfare system.'" *Id.* at 849 (quoting *In re King*, 308 B.R. at 531 (stating also that "[t]here is little reason for a 'fresh start' that will only be answered with a substantial incapacity to provide for oneself at retirement")); *see Hebbring*, 463 F.3d at 907 ("Courts must allow debtors to seek bankruptcy protection while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.").

This court agrees that *Behlke* does not compel the conclusion that voluntary contributions and/or loan repayments to retirement accounts are never reasonably necessary expenses in a § 707(b)(3)(B) analysis but that, instead, the statute requires the court to consider the totality of the particular debtor's circumstances. As one court soundly reasoned, abuse of the provisions of Chapter 7 implies "some sort of action that crosses over a line of appropriateness. It permits consideration of surrounding factors so that abusive use of repayment of retirement plan loans and additional contributions to retirement plans can be separated from legitimate uses." *Vansickel*, 309 B.R. at 209. The mere mathematical ability to fund a Chapter 13 plan if contributions or loan repayments to a retirement account are not made is alone insufficient to find abuse of the provisions of Chapter 7. *Beckerman*, 381 B.R. at 849.

In this case, the evidence indicates that Debtor is at least in his early to mid-fifties. Debtor is an above median income debtor; however, his overall budget reflects a very modest life style limited by a large monthly support obligation. Except for the 401(k) contributions and loan repayment, the UST does not object to any of Debtor's expenses. Debtors monthly 401(k) contribution is approximately $135, or less than 2.5% of his income, and his 401(k) loan repayment is $234, or approximately 4% of his income, neither amounts of which are extravagant or unusual. Debtor's bankruptcy schedules reflect accumulated retirement savings of only $24,200. He owns no real property and no personal property of significant value other than funds in his 401(k) plan. While the court presumes that Debtor will be entitled to Social Security payments at his retirement, the UST offers no evidence of any other retirement income that will be available to him. There is also no evidence regarding Debtor's health or the anticipated work life ahead of him. The court cannot conclude from the record before the court that, given Debtor's age and accumulated retirement savings, the modest amount being paid by him as contributions and loan repayments to his 401(k) plan are

6

not reasonably necessary expenditures.

As reflected in his Schedules I and J, Debtor's net monthly income after expenses is only approximately $10. Nevertheless, the UST estimates that Debtor will have repaid his 401(k) loan in approximately 48 months, which will occur within a Chapter 13 plan's five year applicable commitment period for an above median income debtor. *See* 11 U.S.C. § 1325(b)(4). This would provide a total of less that $3,200 after payment of the Chapter 13 Trustee's administrative expenses to pay on over $47,000 in unsecured debt. The court does not find this repayment amount meaningful such that it would be an abuse to afford Debtor a chapter 7 discharge.

**B. Other *Krohn* Factors**

Debtor enjoys stable employment and regular income as he has worked for the same employer for thirty-four years. He is, therefore, eligible for adjustment of his debts through Chapter 13 since his debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). As discussed above, the UST does not object to any of Debtor's monthly expenses set forth on Schedule J. Having failed to show that Debtor's 401(k) plan contributions and loan repayments are not reasonably necessary expenses, the UST has also failed to demonstrate, that Debtor's expenses can be reduced significantly, if at all, without depriving him of adequate food, clothing, shelter and other necessities. Finally, there is no evidence regarding the availability of debtors' remedies under state law or relief that might be afforded through private negotiations. As the UST bears the burden of proof on the motion, *see Gonzalez*, 378 B.R. at 172, the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

## CONCLUSION

Having reviewed the totality of the circumstances as presented in this case, the court concludes that the UST has failed to demonstrate that Debtor is not needy and, therefore, that granting Debtor relief in this case would be an abuse of the provisions of Chapter 7.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion to dismiss [Doc. # 25] be, and hereby is, **DENIED.**